■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TITUS CONNALLY, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Linakis, J.), rendered June 7, 1982, convicting him of attempted murder in the second degree, criminal use of a firearm in the first degree, assault in the first degree, criminal use of a firearm in the second degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Judgment reversed, on the law, and new trial ordered. No questions of fact have been raised or considered.

The defendant was indicted for attempted murder in the second degree, criminal use of a firearm in the first degree, assault in the first degree, criminal use of a firearm in the second degree, and criminal possession of a weapon in the second degree, in connection with the shooting of one Wendell Fite. At trial, Fite testified that while he was in Andrew Jackson High School, on February 19, 1981, at approximately 10:25 A.M., defendant shot him after he approached defendant and asked him why he had beaten up one Jason Mysell the day before. Fite testified that Mysell had told him that he had been beaten up the previous day by the defendant and other members of the defendant's group known as the "Five Percenters". Defendant denied shooting Fite or carrying a gun. He testified that while he was in the first floor hallway of Andrew Jackson High School, a group of 12 men, whom he recognized to be members of the "Hollis Crew", approached him. One of the men, one Ronnie Mack, put on black leather gloves and positioned himself in front of defendant, and another, one Sidney Barnett, walked behind defendant along with Fite. One of the men then asked defendant a question, and when he answered it, Mack started "swinging". The defendant defended himself by blocking and with that, Mack reached for a gun he had in his waistband. The defendant grabbed for the gun to avoid being shot and during the struggle, the weapon discharged.

During the course of the trial, the trial court permitted, over defense counsel's objection, extensive testimony about the activities and beliefs of the "Five Percenters". While the testimony that defendant was a member of the "Five Percenters" and that the "Five Percenters" were antagonistic to other groups such as the "Hollis Crew" was properly admitted into evidence to establish defendant's motive and intent in shooting Fite (see *People v*

*Ventimiglia,* 52 NY2d 350; *People v Moore,* 42 NY2d 421, cert den 434 US 987; *People v Schwartzman,* 24 NY2d 241, cert den 396 US 846; *People v Molineux,* 168 NY 264; *People v Le Grand,* 76 AD2d 706), the extensive testimony about the activities and beliefs of the "Five Percenters", which was irrelevant to any of the issues at trial, was improperly admitted into evidence and requires reversal (cf. *People v Le Grand, supra*). The trial court is obliged to evaluate with sufficient particularity whether each piece of evidence offered by the People is actually relevant and material to any of the issues at trial (see *People v Santarelli,* 49 NY2d 241). In the instant case the trial court failed to do so. Among the testimony improperly admitted into evidence was that the "Five Percenters" were "not the traditional American religion"; that members "consider themselves Gods", "call themselves God", and wear a button that "stands for God"; that defendant was said to have worn such a button; and that defendant had gone by the name "Master [of] Education". The prosecutor was also improperly allowed to establish that the "Five Percenters" had 3,000 members, met in "[u]niversal parliaments" and considered itself "the chosen people", and to ask whether members had carried guns and whether defendant thought that "[t]he Five Percenters should be the leader of blacks". Finally, the testimony that the "Five Percenters" advocated violence to achieve their ends and "[t]hey were known * * * to have infiltrated most your [*sic*] public high schools and other schools * * * and they would pray [*sic*] on the kids that go to those schools, stealing from them, making them bring in money to them and that type of thing" was improperly admitted into evidence and severely prejudiced the defendant. As noted by the court in *People v Torres* (72 AD2d 754, 755), "there is no rule of evidence that permits a prosecutor to show that a defendant is a member of an organization and then impeach him with the alleged illegal, immoral or vicious acts of that organization". That is precisely what the prosecution did here.

Defendant's contentions relevant to the alleged *Sandoval* error are without merit. Lazer, J. P., Thompson, Niehoff and Rubin, JJ., concur.